IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS K. MANNING, )
)
        Plaintiff, )
  v. )
)
ALAMANCE COUNTY, NORTH ) 1:15-cv-290
CAROLINA, including its Board of )
Commissioners, )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas K. Manning brought this action for breach of contract and, in the alternative, wrongful termination against Defendant Alamance County, North Carolina ("Alamance County" or "the County") pursuant to 28 U.S.C. § 1332. This matter is before the Court on Alamance County's Motion to Dismiss ("Motion") pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure [Doc. #9]. The matter has been fully briefed and is ripe for review. For the reasons stated herein, the Motion is denied in part and granted in part.

I.

After having served as a member of the Alamance County Board of Commissioners for several years and as its chair in 2012 and 2013, Manning was named Alamance County Finance Officer in approximately December 2013. (Compl. ¶ 7-9, [Doc. #1].) On November 6, 2014, he was terminated. (Id. ¶ 29.) On April 2, 2015, Manning filed suit against Alamance County, alleging it breached its employment contract with him for failing to follow proper disciplinary

procedures and, in the alternative, alleging it wrongfully terminated him. (See Compl.)

II.

A.

Alamance County first challenges this Court's subject matter jurisdiction by arguing that there is no diversity of jurisdiction between the parties. In his April 2, 2015 Complaint, Manning alleged that, at the time of filing, he was a citizen and resident of Charleston County, South Carolina. (Id. ¶ 3.) Alamance County argues that statement was not true. In support of its argument, the County argues that Manning was a citizen of North Carolina on November 6, 2014, the date of his termination; his North Carolina driver's license had been renewed for the last twenty-seven and a half years, does not expire until January 17, 2021, and had not been surrendered; as of the date of the County's Motion, Manning was still registered to vote in Alamance County and had never notified the Board of Elections of his change of address; he continued to own property located at 2035 Stuart Court, Burlington, North Carolina and had his Alamance County tax notices mailed there; he withdrew his application on May 7, 2015 with the Burlington Transit Advisory Committee because he was "presently working outside of the area and would not be able to attend the meetings at this time[;]" and his Guilford County divorce proceedings are evidence of forum shopping. (See Br. in Support of Def.'s Mot. to Dismiss Compl. [Doc. #10 at 6-11, Exs. 1-5]; Affs. in Support of Def.'s Mot. to Dismiss Compl. [Docs. #11-15].) In further support of its Motion,

2

the County directs the Court to an April 29, 2015 "curious Facebook post created by . . . upon information and belief, . . . the Plaintiff's current girlfriend . . . 'celebrating' his South Carolina citizenship" as of that date. (See Reply Br. in Support of Def.'s Mot. To Dismiss [Doc. #20 at 5, Ex. 1].)

In response, Manning has proffered evidence in support of his being domiciled in South Carolina as of April 2, 2015. After his termination as Alamance County Finance Officer, Manning moved to Charleston, South Carolina where, on January 31, 2015, he leased an apartment. (See Manning Aff. ¶¶ 2, 4, Ex. A [Doc. #19-1].) By this time he had resigned from the Rotary Club of Alamance County. (See id. ¶ 20, Ex. K (reporting at the February 3, 2015 meeting that "Manning is moving and has resigned from the club") [Doc. #19-2].) On February 2, 2015, he was hired full-time at CresCom Bank in Charleston as a Commercial Credit Administrator where he also opened a new primary bank account. (See id. ¶¶ 5, 7, Exs. B, C [Doc. #19-1]; Aff. Miller [Doc. #19-3].) On March 25, 2015, he was hired as an usher for the Charleston Riverdogs. (See Manning Aff. ¶ 10, Ex. F [Doc. #19-1].) During this time, he notified Bank of North Carolina and his broker of his new Charleston, South Carolina address. (See id. ¶¶ 8, 9, Exs. D, E [Doc. #19-1].)

On February 28, 2015, Manning entered into a Listing Agreement with a realtor to sell his house at 2035 Stuart Court, Burlington, North Carolina. (See id. ¶ 11, Ex. G [Doc. #19-1]; Aff. Sparks [Doc. #19-4].) Despite a price reduction, his house did not sell, so he agreed to lease the house and took it off the market on

3

June 8, 2015. (Manning Aff. ¶ 12 [Doc. #19-1]; Aff. Sparks [Doc. #19-4].) Although the utility bills for the Stuart Court property continued to be mailed to that address prior to the lessee taking over those obligations, it was the only mail sent to that address, and a friend would then forward the bills to Manning in South Carolina. (Manning Aff. ¶¶ 13, 14 [Doc. #19-1].)

On March 20, 2015, Manning and his insurance agent discussed the procedure for changing his North Carolina insurance coverage to South Carolina, effective April 29, 2015, the date Manning's North Carolina policy expired. (See id. ¶ 16, Ex. H [Doc. #19-1].) On April 29, 2015, once Manning's insurance coverage transferred to South Carolina, Manning obtained his South Carolina driver's license, registered to vote, and registered his vehicles after paying South Carolina property tax. (See id. ¶¶ 17, 18, Exs. I, J [Doc. #19-1].) Manning avers that he intends to remain in South Carolina indefinitely. (Id. ¶ 2 [Doc. #19-1].)

B.

Alamance County's challenge to jurisdiction is a factual one. "[T]he County disputes Plaintiff's claim that he is a citizen of Charleston County, South Carolina." [Doc. #10 at 4.] See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (explaining the differences between a facial challenge and a factual challenge to subject matter jurisdiction and citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). Therefore, the Court may look beyond the allegations of the Complaint and consider evidence by affidavit without converting the motion into one for summary judgment. Adams, 697 F.2d at 1219. The presumption for

4

truthfulness afforded the allegations in a Complaint for a Rule 12(b)(6) review does not apply here, and, instead, the Court "is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Kerns, 585 F.3d at 192. When "jurisdictional allegations are challenged, the plaintiff has the burden of proving, by a preponderance of the evidence, that diversity exists." Schaefer v. Marion I. & Henry J. Knott Found., Inc., 813 F.2d 1228 (Table), No. 86-3622, 1987 WL 36777, at *1 (4th Cir. Mar. 11, 1987); see also Adams, 697 F.2d at 1219 (stating that the plaintiff bears the burden of proving subject matter jurisdiction on a motion to dismiss).

Under 28 U.S.C. § 1332(a), the court has subject matter jurisdiction over a "civil[] action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" When a plaintiff files an action in federal court, it is "the citizenship of the parties at the time of commencement of the action [that] determines whether the requisite diversity exists." Rowland v. Patterson, 882 F.2d 97, 98 (4th Cir. 1989).

For purposes of diversity jurisdiction, state citizenship depends on domicile. Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., 145 F.3d 660, 663 (4th Cir. 1998). "Domicile requires physical presence, coupled with an intent to make the State a home." Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989)); see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., No. 3:09-CV-220-MU,

5

2010 WL 1434298, *2 (W.D.N.C. Apr. 6, 2010) (describing domicile as "an individual's place of residence where he intends to remain permanently or indefinitely and to which he intends to return whenever he is away").

A party's intent is determined by weighing the totality of the circumstances, including "current residence[;] voting registration and voting practices[;] location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes[,]" UDX, LLC v. Heavner, 533 B.R. 511, 515-16 (M.D.N.C. 2015), "the person's declarations, . . . payment for utilities, . . . and receipt of mail," Mayfield, 2010 WL 1434298, *2. See also 13E Wright et al., Federal Practice and Procedure § 3612 (3d ed. 2015) (listing the same "[f]actors frequently taken into account" as in UDX, LLC). While "[n]o single factor is determinative, . . . '[v]oting raises a presumption that the voter is a citizen in the state in which he votes[.]'" Mayfield, 2010 WL 1434298, *2 (quoting Griffin v. Matthews, 310 F. Supp. 341, 343 (M.D.N.C. 1969)). Furthermore, a party's own statements of his intended domicile are "not conclusive" and "such testimony is to be accepted with considerable reserve[.]" Webb v. Nolan, 361 F. Supp. 418, 421 (M.D.N.C. 1972), aff'd, 484 F.2d 1049 (4th Cir. 1973) cited in 13E Wright et al., Federal Practice and Procedure § 3612.

Here, although there is some evidence that suggests that Manning was not domiciled in South Carolina at the time he commenced this action, the weight of

6

the evidence is in favor of his domiciliary in that state as of April 2, 2015.  Upon moving to Charleston, South Carolina, Manning leased an apartment on January 31, 2015 and began full-time employment at CresCom Bank as a Commercial Credit Administrator on February 2, 2015 where he opened a primary bank account.  Although he apparently maintained his account at Bank of North Carolina, he notified it and his broker of his updated South Carolina address, at least by the end of February and March, respectively.  Manning was also receiving other mail at his Charleston address.  Although there is no evidence that Manning had joined any associations in Charleston, he did resign his membership in the Rotary Club of Alamance County, at least by February 3, 2015, and he began a part-time job with the Charleston Riverdogs as an usher on March 25, 2015.

At the time he commenced this action, Manning still owned a house in Burlington, North Carolina.  However, on February 28, 2015, he signed a Listing Agreement to sell it.  Although Manning still owned the house as of the time the County moved to dismiss, he had arranged to lease the house after he had received no purchase offers and removed it from the market.  Once the lessee began the lease, all utilities were to be transferred from Manning's to the lessee's name.

Manning did not transfer his automobile insurance policy to South Carolina, register his vehicle in South Carolina, pay his vehicle property tax in South Carolina, or receive his South Carolina driver's license until April 29, 2015, well after he filed his Complaint in this action.  However, there is credible evidence that

7

reflects that, as of March 20, 2015, Manning's insurance agent had begun the process of transferring his automobile insurance policy to South Carolina. According to Manning, April 29, 2015 was the expiration date of his North Carolina policy, a date evidenced in the email between Manning and his agent as the cancellation date of his North Carolina policy and the effective date of his South Carolina policy. His agent also provided Manning with automobile identification cards for South Carolina to use as proof of coverage for the South Carolina Department of Motor Vehicles.

Manning also did not register to vote in South Carolina until April 29, 2015 and, as of the date of the County's Motion, was still a registered voter in Alamance County, North Carolina. However, according to Manning, there were "no elections requiring the use of [his] South Carolina voter's registration card since" he filed the lawsuit. (Manning Aff. ¶ 19.) And, there is no evidence before the Court that Manning voted in North Carolina elections after he moved to South Carolina. See Frye v. S. Lithoplate, Inc., No. 3:13-CV-63, 2013 WL 6246780, at *3 (N.D.W. Va. Dec. 3, 2013) (finding that, although still registered to vote in West Virginia, the plaintiff had last exercised her right to vote in West Virginia well before moving from the state, which was consistent with her argument that she did not intend to return to West Virginia). Therefore, although Manning's registration as a South Carolina voter came after he commenced this action, there is no evidence that he exercised his right to vote in North Carolina after moving to

South Carolina or that he had an opportunity to exercise his right to vote in South Carolina and failed to do so.

In sum, the totality of the circumstances, including Manning's averment that he intends to remain in South Carolina indefinitely, supports a finding that Manning was a citizen of South Carolina at the time he commenced this action and that, therefore, the parties' citizenship is diverse.

### III.

Alamance County also asserts a facial challenge to the alleged amount in controversy, arguing that Manning's allegation that "this civil action concerns an amount in controversy that exceeds the sum of $75,000, exclusive of interest and costs" is a "'bare bones' allegation" with "no meat." (Br. in Support of Def.'s Mot. to Dismiss Compl. at 12.) "[A] plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, ___ U.S. ___, 135 S. Ct. 547, 553 (2014). However, good faith alone "does not control." Wiggins v. N. Am. Equitable Life Assur. Co., 644 F.2d 1014, 1017 (4th Cir. 1981). "[I]f it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed." Id. (quoting McDonald v. Patton, 240 F.2d 424, 426 (4th Cir. 1957)); see also JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (stating the same). This is a "heavy burden" for a defendant challenging the amount-in-controversy allegation and requires a showing that "'the legal impossibility of recovery' [is] 'so certain as

9

virtually to negative the plaintiff's good faith in asserting the claim.'" JTH Tax, Inc., 624 F.3d at 638 (quoting Wiggins, 644 F.2d at 1017).

Alamance County has done nothing more than argue that Manning's allegation "should not pass muster[.]" (See Br. in Support of Def.'s Mot. to Dismiss Compl. at 12.) It has not met the heavy burden of showing the legal impossibility of Manning's recovering in excess of $75,000 for his claims or that such impossibility is so certain so as to negate his good faith allegation.

In his Complaint, Manning alleges lost wages and benefits, among other damages. (Compl. ¶¶ 45, 51.) In his response to the County's Motion, he avers in his affidavit that his annual salary at CresCom Bank is $10,000 less than his salary as Alamance County Finance Officer at the time of his termination. (Manning Aff. ¶¶ 23, 24.) He states that a pay classification study resulted in a probable pay increase for the position of Alamance County Finance Officer, which would be $20,000 more than his current annual salary at CresCom Bank. (Id. ¶ 28.) He further avers that Alamance County paid his health insurance in its entirety, but that CresCom Bank only subsidizes a portion of his health insurance. (Id. ¶¶ 25, 26.) He believes he has sustained a loss in retirement benefits. (Id. ¶ 27.) He also states that he plans to continue working for at least another ten years. (Id. ¶ 29.) In sum, not only has Alamance County failed to meet its burden of challenging the amount-in-controversy allegation, but Manning's averments in his affidavit are consistent with his allegation having been made in good faith.

Therefore, because the parties' citizenship is diverse and Manning has sufficiently alleged an amount-in-controversy, this Court has subject matter jurisdiction over this case. Alamance County's motion to dismiss for lack of subject matter jurisdiction is denied.

IV.

Next, Alamance County argues that the Alamance County Board of Commissioners ("Board") is not subject to personal jurisdiction both because the Board is not a legal entity with the capacity to be sued and because there is insufficient process and service of process upon the individual Board Members. (Def.'s Mot. to Dismiss Compl. ¶ 3 [Doc. #9].) In response, Manning alleges that he has sued only one defendant – Alamance County, including its Board of Commissioners. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl. at 16 [Doc. #19].) He acknowledges that the Affidavit of Service referred to "summonses," but argues that was a clerical error. (Id.) He alleges that he served only one summons and has properly sued Alamance County. (Id.)

Unlike a county, a county's board of commissioners is not a legal entity capable of being sued. Olavarria v. Wake Cty. Human Servs., 763 S.E.2d 18 (Table), No. COA13-1215, 2014 WL 2980253, *3 (N.C. Ct. App. July 1, 2014) (citing Craig v. Cty. of Chatham, 545 S.E.2d 455, 456 (N.C. Ct. App. 2001), aff'd in part, rev'd in part on other grounds, 565 S.E.2d 172 (N.C. 2002)); see also Piland v. Hertford Cty. Bd. of Comm'rs, 539 S.E.2d 669, 671 (N.C. Ct. App. 2000) (holding that the county board of commissioners was not a proper party to

11

be sued). It is difficult to determine precisely whether Manning concedes this point and acknowledges that he is suing only one defendant – Alamance County – or not. To ensure that Manning is suing the only defendant capable of being sued, Alamance County's motion to dismiss the Board of Commissioners as a defendant is granted.

V.

Finally, Alamance County seeks to dismiss Manning's breach of contract claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and argues that Manning "has failed to sufficiently allege the existence of an actual employment contract with Defendant." (Def.'s Mot. to Dismiss Compl. ¶ 4.) In his Complaint, Manning alleges that Alamance County "entered into a valid and enforceable employment contract with [him] as set forth [t]herein." (Compl. ¶ 42.) He alleges that Alamance County breached that employment contract by, among other things, failing to afford him a pre-disciplinary conference, failing to provide him written notice setting forth the reasons for his termination, and failing to afford him the opportunity to address the allegations against him. (Id. ¶¶ 37, 40.) Manning alleges that the County Human Resources System Policy ("Policy"), an exhibit to the Complaint, affords him these rights. (Id. ¶¶ 34-36, Ex. G.) He does not allege the existence of any other employment contract. Therefore, it is determined that Manning is alleging that the Policy is the contract that Alamance County breached.

Manning has not alleged whether he was employed at-will or for a certain term or signed an acknowledgment upon receipt of the Policy that he could be terminated only for cause. However, in response to the County's Motion, Manning seemingly concedes that he was employed at-will, but argues that an otherwise at-will employee may gain a property interest in continued employment where the right is granted by an ordinance. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl. at 17.) Nevertheless, he disavows any contention that the Policy gave him an absolute right to continued employment. (Id. at 18.) Furthermore, although he argues that employee handbooks may form the basis of a property right if they are enacted as an ordinance, the cases he cites in support of this argument involve, for example, a plaintiff seeking severance pay pursuant to the terms of the employee handbook and a plaintiff alleging a due process violation, neither of which are alleged in Manning's Complaint. (Id. at 17-18.)

The Policy itself explicitly states that it is not a contract between the County and an employee. The Policy Handbook provides, in relevant part, "When this policy is presented to employees in the format of an employee personnel policy, neither the personnel policy nor any other County communication or practice creates an employment contract." (Compl. Ex. G Art. 1 § 1.) Furthermore, "It is also hereby stated that nothing in this policy or any other policy or communication changes the fact that employment is at-will for an indefinite period unless terminated at any time by the employee or the County, except as otherwise governed by Federal or State law." (Id.)

13

"North Carolina is an employment at-will state[,]" but "[t]here are limited exceptions" to this rule. Kurtzman v. Applied Analytical Indus., Inc., 493 S.E.2d 420, 422 (N.C. 1997). The parties can specify a definite period of employment contractually. Id. In addition, federal and state statutes prohibit employers from discharging employees based on "impermissible considerations." Id. North Carolina courts also recognize a public policy exception when, for example, an employee is discharged for refusing to work for less than minimum wage or for refusing to falsify records. Id. at 331-32. In addition, if a party furnishes additional consideration, that consideration may "take the case out of the usual employment-at-will rule." Harris v. Duke Power Co., 356 S.E.2d 357, 359 (N.C. 1987). But see Kurtzman, 493 S.E.2d at 423 (noting that the Harris Court "neither specifically approved nor disapproved" of the "moving residence" exception and disapproving any language that may be viewed otherwise). There is also limited case law finding allegations sufficient for a breach of contract claim when the plaintiff was required to sign a statement indicating that she had read the policy manual which stated that she could only be terminated for cause. Trought v. Richardson, 338 S.E.2d 617 (N.C. Ct. App. 1986) cited in Salt v. Applied Analytical, Inc., 412 S.E.2d 97, 100 (N.C. Ct. App. 1991) (noting that the Harris Court "limited the rule in Trought to those specific facts"). Manning alleges none of these exceptions in support of his breach of contract claim. (Compare Compl. ¶¶40-45 (alleging breach of contract) with id. ¶¶47-51 (alleging, in the alternative, wrongful termination).)

Instead, Manning argues that the Policy itself is a contract because it was enacted by ordinance[1] and that Alamance County's failure to follow the disciplinary procedures in the Policy was the breach. "Under North Carolina law, an employee handbook or policy manual does not create a legally binding contract between employer and employee unless the terms of the handbook are expressly incorporated into a separate contract." Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F. Supp. 2d 433, 439 (M.D.N.C. 2004). A handbook or policy manual is expressly incorporated only when there is "language that unmistakably indicates such incorporation." Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 586 (M.D.N.C. 2003); see also Walker v. Westinghouse Elec. Corp., 335 S.E.2d 79, 83-84 (N.C. Ct. App. 1985) ("[T]he law of North Carolina is clear that unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it."). Here, the language of the Policy could not be clearer. In no way is it expressly incorporated into any other contract or does it create a contract by its own terms. Instead, it matter-of-factly states that it does not create an employment contract and nothing in the Policy changes the fact that the employment is at-will for an indefinite period of time.

---

[1] Manning argues that "Alamance County expressly enacted its HR Policy pursuant to North Carolina General Statutes" and directs the Court to the Policy's purpose which states, in part, "This policy is established under the authority of Chapter 153-Article 5 and Chapter 126 of the General Statutes of North Carolina." While the Policy does refer to the General Statutes, it is unclear at this stage of the case if the Policy was enacted as an ordinance. Nevertheless, because Manning's allegations do not otherwise sufficiently state a breach of contract claim, the issue is not dispositive.

Nevertheless, when an employee manual, in effect as a county ordinance, provides by its terms for severance benefits at termination, the employee does have a contractual right to benefits already earned. Bolick v. Cty. of Caldwell, 641 S.E.2d 386, 388, 390 (N.C. Ct. App. 2007). As above, however, Manning makes no claim for benefits already earned. Instead, he makes the same argument as did the plaintiff in Paschal v. Myers, 497 S.E.2d 311, 315 (N.C. Ct. App. 1998), who "maintain[ed] . . . the mere fact that the [Board] had adopted, as an ordinance, the County's personnel policies contained in the Handbook demands that the Handbook's personnel policies were a part of his contract." The Paschal court found that argument "unpersuasive" and affirmed summary judgment in the defendant's favor on plaintiff's breach of contract claim. Id. The Paschal court and others have, though, recognized that an employee handbook that is also an ordinance can create "the reasonable expectation of continued employment within the meaning of the Due Process Clause." See Paschal, 497 S.E.2d at 315; Howell v. Town of Carolina Beach, 417 S.E.2d 277, 281 (N.C. Ct. App. 1992). However, Manning has made no claim of a due process violation.

In sum, there is no basis in law for Manning's allegation that the Policy was a contract that Alamance County breached by failing to follow the Policy's disciplinary procedures when the County terminated him. Therefore, Alamance County's motion to dismiss Manning's breach of contract claim is granted.

The County has cited no basis in law for its alternative motion to dismiss Manning's wrongful termination claim at this stage of the case. See Fed. R. Civ. P.

16

8(d)(2), (3) (permitting a party to allege two or more claims alternatively in separate claims, regardless of consistency).

VI.

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Complaint [Doc. #9] be **DENIED IN PART AND GRANTED IN PART** such that the Court finds that it has subject matter jurisdiction, that the Alamance County Board of Commissioners is dismissed as a defendant, and that Plaintiff's Breach of Contract claim is dismissed.

This the 1st day of March, 2016.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
